**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**SOUTHERN DIVISION**

IA LABS CA, LLC,

Plaintiff,

vs.

NINTENDO CO., LTD. et al.,

Defendant.

Civil Action No. 8:10-CV-833-PJM

**NINTENDO CO., LTD. AND NINTENDO OF AMERICA'S OPPOSITION TO**
**IA LABS CA, LLC'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

## TABLE OF CONTENTS


Page

I. INTRODUCTION ... 1

II. IA LABS' MOTION IS PREMATURE ... 2

A. Claim Construction is an Essential Prerequisite To Any Invalidity Analysis ... 3

B. Invalidity Should Be Decided Based on a Fully Developed Factual Record ... 5

III. ESTOPPEL DOES NOT APPLY ... 6

A. Inter Partes Reexamination is Limited to Patents and Printed Publications ... 7

B. Estoppel Applies Only After the Claims Are "Finally Determined" to be Patentable ... 8

C. Newly Discovered Prior Art Is Exempt from Estoppel ... 9

IV. IA LABS' MOTION IS FATALLY FLAWED ... 10

A. IA Labs Has Not Met its Initial Burden of Production ... 10

B. IA Labs' Erroneously Describes the Evidentiary Burden ... 12

V. THE '982 PATENT IS INVALID UNDER SECTIONS 102 AND 103 OF THE PATENT STATUTE ... 13

A. The Law of Anticipation and Obviousness ... 13

1. Anticipation under 35 U.S.C. §102 ... 13
2. Obviousness under 35 U.S.C. § 103 ... 14

B. The "Invention" Claimed in the '982 Patent ... 15

C. The '982 Patent is Invalid for Anticipation ... 19

1. The IVES system Anticipates the Claimed Invention ... 20
2. The Suzuki Publication Anticipates the Claimed Invention ... 24
3. The Brawne Patent Anticipates the Claimed Invention ... 26
4. The Yamashima Publication Anticipates the Claimed Invention ... 28

D. The '982 Patent is Invalid for Obviousness ... 30

1. Li and Berme Render the Patent Obvious ... 31
2. Dang and Berme Render the Patent Obvious ... 36

# TABLE OF CONTENTS
(continued)

Page


3. Suzuki and Berme Render the Patent Obvious ........ 37
4. Yamashima Renders the Patent Obvious ........ 38
5. Brawne Renders the Patent Obvious........ 42

VI. IA LABS' REQUEST FOR RELIEF IS OVERLY BROAD........ 43

A. IA Labs' Erroneously Asks the Court to Strike Nintendo's Section 112 Invalidity Defenses ........ 43

B. Patents Are Not Declared "Valid" ........ 44

VII. CONCLUSION........ 44

# TABLE OF AUTHORITIES

Page

**FEDERAL CASES**

*ACCO Brands, Inc. v. PC Guardian Anti-Theft Products, Inc.*,
592 F. Supp. 2d 1208 (N.D. Cal. 2008) ....................7, 8

*Amazon.com, Inc. v. Barnesandnoble.com, Inc.*,
239 F.3d 1343 (Fed. Cir. 2001)....................3

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)....................2, 12

*Bayer AG v. Biovail Corp.*,
279 F.3d 1340 (Fed. Cir. 2002)....................4

*Continental Can Co. USA v. Monsanto Co.*,
948 F.2d 1264 (Fed. Cir. 1991)....................13

*Duramed Pharmaceuticals, Inc. v. Watson Labs., Inc.*,
2011 WL 1086573 (Fed. Cir. Mar. 25, 2011)....................12, 13

*Ethicon v.Quigg*,
849 F.2d 1422 (Fed. Cir. 1988)....................40

*Evans v. Techs. Applications & Serv. Co.*,
80 F.3d 954 (4th Cir.1996) ....................2

*Graham v. John Deere Co. of Kansas City*,
383 U.S. 1 (1966)....................15

*Haulbrook v. Michelin North Amer., Inc.*,
252 F.3d 696 (4th Cir. 2001) ....................12

*In re Baxter Travenol Labs.*,
952 F.2d 388 (Fed. Cir. 1991)....................14

*In re King*,
801 F.2d 1324 (Fed. Cir. 1986)....................14

*In re Morris*,
127 F.3d 1048 (Fed. Cir. 1997)....................28

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*In re Schreiber*,
128 F.3d 1473 (Fed. Cir. 1997)....................14

*In re Swanson*,
540 F.3d 1368 (Fed. Cir. 2008)....................40

*IP Innovation, L.L.C. v. Red Hat, Inc.*,
Civ. No. 2:07-cv-447 (E.D. Tex. Oct. 13, 2010)....................14

*KSR Intern. Co. v. Teleflex Inc.*,
550 U.S. 398 (2007).................... passim

*LG Electronics, Inc., v. Everex Systems*,
2000 U.S. Dist. LEXIS 20317 (E.D. Va. 2000)....................2

*Markman v. Westview Instruments, Inc.*,
52 F.3d 967 (Fed. Cir. 1995), *aff'd*, 517 U.S. 170 (1996)....................3, 4

*McKinney v. Bd of Trustees of Mayland Cmty. Coll.*,
955 F.2d 924 (4th Cir. 1992)....................12

*Monarch Knitting Mach. Corp. v. Sulzer Morat GmbH*,
139 F.3d 877 (Fed.Cir.1998)....................12

*Nguyen v. CNA Corp.*,
44 F.3d 234 (4th Cir.1995)....................2

*Opryland USA, Inc. v. Great American Music Show, Inc.*,
970 F.2d 847 (Fed. Cir. 1992)....................2

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005) (en banc)....................18

*Safoco, Inc. v. Cameron Intern. Corp*,
2009 WL 2424108 (S.D. Tex. 2009)....................9

*Sanofi-Synthelabo v. Apotex, Inc.*,
550 F. 3d 1075 (Fed. Cir. 2008)....................13

*Schering Corp. v. Geneva Pharms., Inc.*,
339 F.3d 1373 (Fed. Cir. 2003)....................13

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*SRI Int'l v. Matsushita Elec. Corp. of America*,
775 F.2d 1107 (Fed. Cir. 1998)....18

*State Contracting & Eng'g Corp. v. Condette Am., Inc.*,
346 F.3d 1057 (Fed. Cir. 2003)....3

*Studiengesellschaji Kohle, rn.b.H v. Dart Indus., Inc.*,
726 F.2d 724 (Fed. Cir. 1984)....13

*Trull v. Dayco Products, LLC*,
329 F. Supp. 2d 658 (W.D.N.C. 2004)....10

*Vivid Technologies, Inc. v. American Science & Engineering, Inc.*,
200 F.3d 795 (Fed. Cir. 1999)....11

*Castillo v. Emergency Med. Assocs., PA*,
372 F.3d 643 (4th Cir. 2004)....10

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)....10, 11

*Freedman Seating Co., v. American Seating Co. and Hi-Tech Seating Prods., Inc.*,
420 F.3d 1350 (Fed. Cir. 2005)....12

*Matsushita Elec. Indus. Co. v. Zenith Radio*,
475 U.S. 574, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)....13

*Temkin v. Frederick Co. Comm'rs*,
945 F.2d 716, 719 (4th Cir.1991)....2

*United States v. Lee*,
943 F.2d 366 (4th Cir.1991)....13

**FEDERAL STATUTES**

35 U.S.C. § 102....13, 24

35 U.S.C. § 102(a)....14, 28, 29

35 U.S.C. § 102(b)....6, 14, 26, 27

35 U.S.C. § 103.... passim

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

35 U.S.C. § 103(a) ....................................................................................................14

35 U.S.C. § 112....................................................................................18, 38, 39, 40

35 U.S.C. § 301 ....................................................................................................7, 8

35 U.S.C. § 311 ........................................................................................................8

35 U.S.C. § 315(c) .................................................................................................7, 9

35 U.S.C. § 316 ........................................................................................................9

**RULES**

Fed. R. Civ. P. 30(b)(6)............................................................................................5

Fed. R. Civ. P. 56 .....................................................................................................3

Fed. R. Civ. P. 56(c) ...............................................................................................12

Fed. R. Civ. P. 56(d) ......................................................................................... passim

Fed. R. Civ. P. 56(f)...............................................................................................2, 3

**REGULATIONS**

37 C.F.R § 1.555(b) ................................................................................................28

**OTHER AUTHORITIES**

10B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2741 (3d ed. 1998) ..........................................................................2

*Manual of Patent Examining Procedure* .............................................................8, 28

## I. INTRODUCTION

IA Labs' motion is fundamentally flawed. It relies upon an erroneous interpretation of estoppel law, and disregards the mountain of evidence supporting Nintendo's invalidity defense. It was filed while invalidity discovery is still underway, before expert discovery has been conducted and long before the claims of the patent will be interpreted by the Court.

Contrary to IA Labs' assertions, no estoppel exists from an intermediate decision rendered in the pending Reexamination. If an estoppel eventually arises, it will only occur after all proceedings are complete and a reexamination certificate issues. Here, the Patent Office has not even proceeded to the internal appeal stage, let alone to the review that will occur in the court system. Even then, any estoppel will not apply to "prior art" that could not have been considered by the Patent Office, such as actual physical devices or recently-discovered publications and patents.

The motion is also premature. Analyzing invalidity requires the Court to construe the patent's claims, and that process will not be completed until the two-day "Markman" hearing is conducted in January 2012. Discovery is still underway, and Nintendo is still locating additional prior art, especially prior art devices that, under the law, could never be part of any reexamination. The Court should therefore defer action pursuant to Rule 56(d) to allow discovery to be completed and the claim construction issues to be resolved.

Contrary to IA Lab's assertions, voluminous invalidity evidence has already been developed. Although the process is still underway, Nintendo nevertheless provided IA Labs a thorough explanation of the patent's invalidity, including an expert report, a declaration, detailed interrogatory responses, and document production. At a minimum, that evidence demonstrates that a genuine issue of material fact exists, precluding grant of IA Labs' motion.

## II. IA LABS' MOTION IS PREMATURE

"A court should deny summary judgment when the nonmoving party has not had the opportunity to conduct discovery into matters raised in the motion." *LG Electronics, Inc., v. Everex Systems*, 2000 U.S. Dist. LEXIS 20317, *7 (E.D. Va. Dec. 21, 2000)[1] (citing Fed. R. Civ. P. 56(f) and *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.5 (1986)); *see also Nguyen v. CNA Corp.*, 44 F.3d 234, 242 (4th Cir. 1995) ("[T]he requirement that the non-moving party respond specifically to a summary judgment motion is qualified by Rule 56(f)'s requirement that 'summary judgment be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition'")(citation omitted); *Opryland USA, Inc. v. Great Am. Music Show, Inc.*, 970 F.2d 847, 852 (Fed. Cir. 1992) (same); *Temkin v. Frederick Co. Comm'rs*, 945 F.2d 716, 719 (4th Cir.1991) ( "Summary judgment may only be entered after 'adequate time for discovery.'") (citation omitted).

Summary judgment is not appropriate before discovery is completed. *See Anderson*, 477 U.S. at 250 n.5 (noting that "summary judgment [must] be refused where the nonmoving party has not had the opportunity to discover information that is essential to [its] opposition"). *See also* 10B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2741, at 413-16 & n.2 (3d ed. 1998) ("[T]he granting of summary judgment will be held to be error when discovery is not yet completed. . . .").[2]

Federal Rule 56(d)[3] provides the court with authority to deny a premature motion for summary judgment where the nonmoving party demonstrates that it has not had adequate time

---

[1] Exhibit N.

[2] *See also Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir.1996) (finding that summary judgment is generally inappropriate absent fair opportunity for discovery); *Opryland USA Inc. v. Great Am. Music Show, Inc.*, 970 F.2d 847, 852 (Fed. Cir. 1992) (vacating grant of summary judgment).

[3] The amendments to the Federal Rules of Civil Procedure effective December 1, 2010, included several changes to Rule 56. The revisions re-numbered the sub-divisions to the Federal Rules so that old Rule 56(f), as revised, is now Rule 56(d). Cases pre-dating the amendments, while still applicable, cite to the older version of the rule.

for discovery or requires additional time to complete it. *See* Fed. R. Civ. P. 56(d) ("If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order."). That circumstance exists here.

IA Labs' Motion for Partial Summary Judgment was filed before the Court has construed the claims, and over five and a half months before fact and expert discovery will be completed. Forthcoming document production, fact depositions, expert reports, expert depositions and other discovery activities are essential to identify all of the genuine issues of material fact that exist concerning Nintendo's anticipation and obviousness defenses. In compliance with Rule 56(d), the Declaration of Tyler C. Peterson submitted herewith explains the need for discovery and specifies the relevant information that will be developed during remaining fact and expert discovery in this litigation. The Court therefore should deny IA Labs' motion as premature under Fed. R. Civ. P. 56(d).

**A. Claim Construction is an Essential Prerequisite To Any Invalidity Analysis**

The first step in evaluating invalidity is to interpret the patent claims at issue. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 997 n.7 (Fed. Cir. 1995) (en banc) ("[A] claim 'must be construed before determining its validity, just as it is first construed before deciding infringement."), *aff'd*, 517 U.S. 170 (1996). *See also State Contracting & Eng'g Corp. v. Condotte Am., Inc.*, 346 F.3d 1057, 1067 (Fed. Cir. 2003); *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1351 (Fed. Cir. 2001) ("[T]he first step is to determine the meaning and scope of each claim in suit") (quotations omitted). Granting summary judgment of no invalidity without interpreting the scope of the claims is reversible

error. *See also Bayer AG. v. Biovail Corp.*, 279 F.3d 1340 (Fed. Cir. 2002) (vacating summary judgment and remanding for claim construction proceedings).

Here, the parties dispute the scope and meaning of numerous terms and phrases from the '982 patent.[4] The resolution of those disputes must occur before deciding if the claims are anticipated and obvious. *Markman*, 52 F.3d at 997. This is not a mechanical requirement – the claims and the prior art cannot be compared without defining the scope of the invention.

For example, under Plaintiff's proposed constructions (of the terms "isometric exercise system," "isometric exercise," and the "manipulation" terms), U.S. Patent No. 6,225,977, entitled "Human Balance Driven Joystick," to Dr. John C. Li (the "Li" patent)[5] renders the claims of the '982 patent unpatentably obvious.[6] Li uses a "force detection platform" that detects weight-shifting to control a computer.[7] The Li force platform does not move, and therefore fits in IA Labs' proposed definition of an "isometric exercise system."[8] Nintendo disagrees with IA Lab's construction.[9] Thus, before analyzing invalidity, the Court needs to determine whether a device that requires movement to function, like Dr. John Li's "Human Joystick," is an isometric exercise system.

This is just one of the many claim construction issues that the Court should resolve before considering dispositive invalidity motions. Only construed claims can be properly

---

[4] Claim Construction Briefs, ECF Nos. 85, 86, 98 and 99.
[5] Exh. 7 to Peterson Decl.
[6] *See* Exhibit 2 to the Declaration of R. Lee Rawls ("Rawls Decl.") filed concurrently herewith, Rawls Expert Report ¶¶ 187-192; Rawls Decl. ¶¶ 11-21; Exhibit 2 to Declaration of Tyler C. Peterson ("Peterson Decl.") filed concurrently herewith, Nintendo 1st Suppl. Rog. Resp. at 22-23.
[7] Li, Abstract: "A method and apparatus for driving a computerized cursor through the translation of weight shifts of the human body."
[8] IA Opening Claim Constr. Br., ECF No. 85, at 1-2 (arguing an "isometric exercise system" is an exercise device "that does not move").
[9] In contrast, Nintendo has argued the court is required to adopt the patent's definition of "isometric exercise," which requires static exercise where there is "substantially minimal or no movement of the user's muscles." Nintendo Opening Claim Constr. Br., ECF No. 86, at 25-30. Li does not disclose an isometric exercise system under this definition because the user "controls the movements of a software application icon with his own body movements." Li, 4:13-15.

compared to the prior art. The parties' unresolved claim construction disputes therefore preclude summary judgment.

**B. Invalidity Should Be Decided Based on a Fully Developed Factual Record**

In accordance with Rule 56(d), the Declaration of Tyler C. Peterson submitted herewith explains the relevant facts and evidence that Nintendo believes will be developed during the remaining 3 months of discovery in this litigation.

Nintendo is diligently pursuing the document and deposition discovery necessary to show the many prior art devices that anticipate the patent's claims or render them obvious.[10] This includes investigating "balance platform" manufacturers such as NeuroCom and Bertec, Inc., in collaboration with consultants and experts in the field.[11] Nintendo is also investigating the prior developments by Dr. Li.[12] At least eight fact depositions remain to occur that are relevant to Nintendo's Section 102 and 103 defenses.[13] IA Labs also seeks a deposition of Nintendo pursuant to Rule 30(b)(6) concerning invalidity, which is likely to occur in the last week of June.[14]

The parties also stipulated to a second round of expert reports, with Nintendo's invalidity report due on July 26.[15] Nintendo's experts' reports on invalidity will be updated in light of recent fact discovery, including newly discovered prior art, and recent developments in the '982 patent reexamination proceedings.[16] IA Labs' expert will respond on August 24.[17] This report

---

[10] Peterson Decl. ¶¶ 3-11.
[11] *Id.* ¶¶ 4-6.
[12] *Id.* ¶ 7.
[13] *Id.* ¶ 8.
[14] *Id.*
[15] Joint Proposed Case Schedule, ECF No. 104.
[16] Peterson Decl. ¶¶ 10-11.
[17] Joint Proposed Case Schedule, ECF No. 104.

will be the first explanation from IA Labs regarding invalidity.[18] Nintendo's experts will reply to IA Labs' report on September 9. Expert depositions will be completed by October 14.

As set forth in the Peterson Declaration, Nintendo is diligently pursuing discovery. Nintendo's discovery planning relied on the agreed-upon schedule entered by the Court. Thus, Nintendo fully expects to complete fact and expert discovery in accordance with the current scheduling order.[19]

IA Labs' request for partial summary judgment is premature. The Court should deny IA Labs' motion in accordance with Rule 56(d).

## III. ESTOPPEL DOES NOT APPLY

IA Labs argues, without citing to any legal support, that the "estoppel nature" of *inter partes* reexamination compels summary judgment.[20] IA Labs is mistaken. The law on this is crystal clear – no such estoppel effect precludes Nintendo's defenses. First, the PTO can only consider patents and printed publications, not the many other kinds of prior art applicable to this case. Estoppel under the *inter partes* reexamination statute therefore would never apply to products or systems in public use or sale in the United States more than a year before the filing date of the '982 patent. 35 U.S.C. § 102(b). Second, the estoppel provision does not apply to "newly discovered prior art." Third, no estoppel arises until a reexamination certificate has issued, which will not occur until after all appeals are resolved.

The lack of any estoppel at this stage prompted Nintendo to try to resolve the issue without court intervention. Upon receipt of Plaintiff's motion, counsel for Nintendo telephoned

---

[18] Two days after Nintendo's initial invalidity expert report, the Court granted in part Nintendo's motion to modify the case schedule by extending fact discovery and schedule a claim construction hearing. Order, ECF No. 73. IA Labs' response to Nintendo's initial invalidity reports would have been due two weeks later. Scheduling Order, ECF No. 20. As a result, IA Labs did not provide a responsive expert report on invalidity.
[19] Peterson Decl. ¶¶ 5-11.
[20] Memo ISO of IA's Motion ("IA's Brief") at 7-8.

IA Labs' counsel to discuss the estoppel allegation.[21] Nintendo explained the three reasons estoppel does not apply.[22] In the conversation, IA Labs' counsel stated that IA Labs "is not arguing Nintendo is estopped from relying on any prior art."[23] Rather, IA Labs' counsel said they believe that the Examiner's non-final Action Closing Prosecution ("ACP") confirming patentability is "persuasive evidence" and that Nintendo "has no evidence of invalidity."[24] That statement from IA Labs' counsel should have mooted the estoppel issues. However, Nintendo's counsel sent a confirming e-mail message following the conversation.[25] IA Labs responded with a complete reversal of position, stating that "Nintendo is estopped from raising the invalidity defenses of anticipation and obviousness."[26] Thus, the parties have not resolved the estoppel issue and it remains a contention in IA Labs' motion despite the lack of any supporting law.

### A. *Inter Partes* Reexamination is Limited to Patents and Printed Publications

The patent statute provides:

> A third-party requester whose request for an inter partes reexamination results in an order under section 313 is estopped from asserting at a later time, in any civil action arising in whole or in part under section 1338 of title 28, the invalidity of any claim finally determined to be valid and patentable on any ground which the third-party requester raised or could have raised during the inter partes reexamination proceedings.

35 U.S.C. § 315(c). "Estoppel does not apply to grounds for invalidity based on prior art that was not and could not have been before the PTO." *ACCO Brands, Inc. v. PC Guardian Anti-Theft Prods., Inc.*, 592 F. Supp. 2d 1208, 1217 (N.D. Cal. 2008). The PTO considers only "'patents or printed publications' during reexamination." *Id.* at 128; *see also* 35 U.S.C. § 102

---

[21] Peterson Decl. ¶ 12.
[22] *Id.*
[23] *Id.* ¶ 13.
[24] *Id.*
[25] Exh. 12 to Peterson Decl., Peterson to Mort re Motion for Partial Summary Judgment; Peterson Decl. ¶ 14.
[26] Peterson Decl. ¶ 14.

(defining "printed publication" as a written description dating from before the challenged patent), 301, 311; *Manual of Patent Examining Procedure* ("MPEP") § 2609(B).[27] Prior art systems, products and inventions are outside the reexamination statute.[28]

This limitation is well-known to the plaintiff, as it previously emphasized to the Court that reexamination estoppel only applies to patents and printed publications. As IA Labs explained:

> A reexamination must be decided based on patents and printed publications only, whereas a trial in district court involves a much broader array of evidence. *See* 35 U.S.C. § 301; 35 U.S.C. § 311.

(IA's Response to Motion to Stay, ECF No. 65 at 14.)[29] Despite this admission, IA Labs now argues that estoppel prevents any argument of invalidity. The estoppel provisions are nevertheless inapplicable.

### B. Estoppel Applies Only After the Claims Are "Finally Determined" to be Patentable

The reexamination statute, by using the word "finally," expressly states that the estoppel effect of an *inter partes* reexamination does not attach until a reexamination proceeding is final. This is the plain meaning of the statute, a meaning confirmed by the PTO and district court interpretations of the statute.

The PTO has repeatedly declared that a reexamination is not "final" until the PTO issues a reexamination certificate. *See* (MPEP) § 2686.04 (estoppel applies where an invalidity argument has been finally resolved through all appeals, either through civil litigation or inter

---

[27] Exhibit P.
[28] Nintendo will also never be estopped from relying on prior art references provided to the PTO combined with non-literature prior art under 35 U.S.C. § 103. *Acco Brands,* 592 F. Supp. 2d at 1217-18.
[29] *See also* Response to Motion to Stay, ECF No. 65, at 11-12 ("It is important to note that the reexamination proceeding is limited to prior art patents and printed publications, so that the defenses of enablement, written description, and prior use or sale are not available for challenging the existing patent claims in *inter partes* (or *ex parte*) reexamination proceedings.")

partes reexamination).[30] *See also Inter Partes Reexamination* 95/000093(2005-08-23 Petition Decision, p. 9) ("As earlier explained, the statutory scheme creates a reciprocal estoppel effect, and the term 'final decision,' is used equally in reciprocal fashion in the same statutory clause applied to both inter partes reexamination proceedings and civil actions.").[31] The only district court to have considered the issue reached the same conclusion. *See Safoco, Inc. v. Cameron Int'l. Corp.*, 2009 WL 2424108, at *29 (S.D. Tex. July 31, 2009)[32] ("[A] patent claim is not 'finally determined to be valid and patentable' . . . until the USPTO issues a reexamination certificate.") (citation omitted).

The language of Section 316, which discusses reexamination certificates, also uses the phrase "finally determined." It therefore confirms that *inter partes* reexamination estoppel does not apply until a reexamination certificate has issued. In the words of the statute:

> In an inter partes reexamination proceeding under this chapter, when the time for appeal has expired or any appeal proceeding has terminated, the Director shall issue and publish a certificate canceling any claim of the patent *finally determined* to be unpatentable . . . ."

35 U.S.C. § 316 (emphasis added). The '982 patent reexamination certificate has not issued, and will not until all appeals have been resolved. The Examiner's determination (once final) will be appealed.

**C. Newly Discovered Prior Art Is Exempt from Estoppel**

The estoppel provision expressly exempts assertions of invalidity based on "newly discovered prior art." 35 U.S.C. § 315(c). The statute provides:

> This subsection does not prevent the assertion of invalidity based on newly discovered prior art unavailable to the third-party

---

[30] Exhibit R.
[31] Exhibit O.
[32] Exhibit K.

> requester and the Patent and Trademark Office at the time of the inter partes reexamination proceedings.

*Id.* After requesting reexamination, Nintendo continued seeking prior art, and that investigation uncovered other prior art showing invalidity. As IA Labs previously admitted, this newly discovered prior art falls within the statutory safe harbor:

> As a party requesting *inter partes* reexamination, Nintendo will only be estopped from challenged the patents' validity using the same prior art that could have been raised in the *inter partes* proceeding, and *not newly discovered prior art*. *See* 35 U.S.C. § 315(c) ([Nintendo] may still argue "invalidity based on newly discovered prior art unavailable to the third-party requester and the Patent and Trademark Office at the time of the inter partes reexamination proceedings.").

(IA Labs' Response to Motion to Stay at 14-15, ECF No. 65 (emphasis added).)

For example, U.S. Patent No. 6,389,883 (the "Berme" Patent)[33] and prior art products and literature concerning "force plates" and "balance platforms" developed by Neurocom[34] and Bertec,[35] are potentially central parts of Nintendo's current invalidity contentions. They were discovered after the reexamination commenced. Regardless of the final outcome of the reexamination, Nintendo can still rely on this newly discovered prior art in the litigation.

## IV. IA LABS' MOTION IS FATALLY FLAWED

IA Labs' motion is also procedurally deficient and based on a misunderstanding of the applicable evidentiary standard.

### A. IA Labs Has Not Met its Initial Burden of Production

In a summary judgment motion, the moving party has the threshold burden of 1) informing the court of the basis of the motion, 2) establishing that there is no genuine issue of

---

[33] Exh. 6 to Peterson Decl., U.S. Patent No. 6,389,883, entitled "Device, system, and method for measurement of balance, stability, and tremor," to Necipe Berme et al. ("Berme").
[34] Exh. 25 to Peterson Decl., Compilation of Neurocom Related Documents Produced During Discovery
[35] Exh. 26 to Peterson Decl., Compilation of Bertec Related Documents Produced During Discovery.

material fact, and 3) showing that it is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986), *Castillo v. Emergency Med. Assocs., PA*, 372 F.3d 643, 646 (4th Cir. 2004); *Trull v. Dayco Prods., LLC*, 329 F. Supp. 2d 658, 672 (W.D.N.C. 2004) ("Regardless of whether he may ultimately be responsible for proof and persuasion, the party seeking summary judgment bears an initial burden of demonstrating the absence of a genuine issue of material fact.") (quotation omitted). IA Labs has not met this initial burden.

When the moving party does not have the burden of proof at trial, the party may meet its initial burden in one of two ways. *Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 807 (Fed. Cir. 1999). The movant may either provide evidence that negates an essential element of the opposing party's case, or show that the evidence on file (discovery disclosures, depositions, admissions, etc.) demonstrates an absence of material issues of fact and that the movant is entitled to judgment as a matter of law. *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). IA Labs has not met this initial burden.

IA Labs' motion merely points to the Examiner's recent "Action Closing Prosecution"[36] in the re-examination, and then demands summary judgment. IA Labs ignores the voluminous invalidity evidence supporting invalidity and thereby showing genuine issues of material fact. The evidence includes detailed interrogatory responses and expert reports concerning the invalidity of the claims,[37] claim charts comparing the claims to the prior art limitation by limitation basis, and expert opinion analysis concerning all essential elements of the obviousness

---

[36] An "Action Closing Prosecution" (ACP) does not stop the reexamination proceeding. On or before May 11, IA Labs may file comments with the PTO responding to the Action Closing Prosecution. If IA Labs files such comments, Nintendo may file a response within 30 days. At some point thereafter, the Examiner will issue a "Right of Appeal Notice." Assuming the decision is appealed, the reexamination will thereafter be pending before the Patent Office Board of Patent Appeals and Interferences.

[37] Exh. 2 to Peterson Decl., Nintendo Suppl. Rog Responses; Rawls Report; Exh. 3 to Peterson Decl., Expert Report of Ian Bogost ("Bogost Report").

conclusion.[38] IA Labs provided no evidence of its own.[39] This is insufficient to carry the initial burden of production on a motion for summary judgment.

Because IA Labs failed to meet its initial burden, the Court should deny IA Labs' Motion.

**B. IA Labs' Erroneously Describes the Evidentiary Burden**

Rule 56(a) provides for summary judgment only if the Court, viewing the record as a whole, determines "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Haulbrook v. Michelin N. Am., Inc.*, 252 F.3d 696, 702 (4th Cir. 2001) (citing *McKinney v. Bd. of Trustees of Mayland Cmty. Coll.*, 955 F.2d 924, 928 (4th Cir. 1992)) (stating that "summary judgment should be granted only when it is perfectly clear that no issue of material fact exists, and it is not necessary to inquire further into the facts in order to clarify the operation of the law").

IA erroneously argues that Nintendo bears the burden of responding to IA Labs' Motion with "clear and convincing evidence" of invalidity. IA is wrong. *See Duramed Pharm., Inc. v. Watson Labs., Inc.*, 2011 WL 1086573, at *5 (Fed. Cir. Mar. 25, 2011)[40] (reversing grant of summary judgment of non-obviousness where district court required non-moving party to set forth clear and convincing evidence of obviousness).

IA Labs moved for summary judgment of no invalidity. Although the ultimate evidentiary burden of showing invalidity by clear and convincing evidence does not change on summary judgment, Nintendo can defeat summary judgment by showing a genuine issue of material fact, which, if believed by the finder of fact, could provide clear and convincing

[38] Rawls Report ¶¶ 173-198. *See also* Rawls Decl ¶¶ 5-39.
[39] IA Labs even failed to attach a copy of the '982 patent to its summary judgment motion, much less identify the prior art of record and demonstrate why Nintendo cannot provide invalidity based on that prior art.
[40] Exhibit L.

evidence of invalidity. *Id. See Freedman Seating Co. v. American Seating Co.*, 420 F.3d 1350, 1364 (Fed. Cir. 2005); *see also Monarch Knitting Mach. Corp. v. Sulzer Morat GmbH*, 139 F.3d 877, 881 (Fed. Cir. 1998) ("If facts remain in dispute, this court weighs the materiality of the dispute, i.e., whether resolution of the dispute one way or the other makes a difference to the final determination of obviousness."). The facts, and inferences to be drawn from the facts, are to be viewed in the light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, (1986); *United States v. Lee*, 943 F.2d 366, 368 (4th Cir.1991).

Nintendo need only identify genuine issues of material fact, not establish anticipation and obviousness by clear and convincing evidence. *Duramed*, 2011 WL 1086573, at *5.

## V. THE '982 PATENT IS INVALID UNDER SECTIONS 102 AND 103 OF THE PATENT STATUTE

Genuine issues of material fact preclude summary judgment. Even based on the presently incomplete factual record, the evidence on file is sufficient to establish that the asserted claims of the '982 patent are invalid as "anticipated" and "obvious." The Court should accordingly deny IA Labs' motion.

### A. The Law of Anticipation and Obviousness

An invention is patentable only if it is new and "non-obvious." 35 U.S.C. §§ 102, 103. The '982 patent claims are neither.

#### 1. Anticipation under 35 U.S.C. §102

An invention is "anticipated" when it is not new. *Sanofi-Synthelabo v. Apotex, Inc.*, 550 F. 3d 1075, 1083 (Fed. Cir. 2008), *cert. denied*, 130 S. Ct. 493 (U.S. 2009). Anticipation requires that every element and limitation of the claim was previously described in a single prior art disclosure, either expressly or inherently, so as to place a person of ordinary skill in possession

of the invention. *See Schering Corp. v. Geneva Pharm., Inc.*, 339 F.3d 1373, 1379 (Fed. Cir. 2003); *Cont'l Can Co. USA v. Monsanto Co.*, 948 F.2d 1264, 1267-69 (Fed. Cir. 1991). "[A]nticipation must be found in a single reference, device, or process." *Studiengesellschaft Kohle, m.b.H v. Dart Indus., Inc.*, 726 F.2d 724, 726-27 (Fed. Cir. 1984). Prior art inherently anticipates a patent when it necessarily functions in accordance with the claimed limitations of the patent. *In re King*, 801 F.2d 1324, 1326 (Fed. Cir. 1986). Anticipation is a question of fact. *In re Schreiber*, 128 F.3d 1473, 1477 (Fed. Cir. 1997).

A patent or printed publication, whether in the United States or a foreign country, is prior art to a patent claim if the patent or publication occurred before the date of invention of the claim, 35 U.S.C. § 102(a), or more than one year before the date that the patent application was filed. 35 U.S.C. § 102(b). A development in public use or on sale in the United States, more than one year before the date of the patent application, is also prior art. 35 U.S.C. § 102(b). Although anticipation must be found in a single item of prior art, additional references can be examined to interpret the anticipatory reference. *In re Baxter Travenol Labs.*, 952 F.2d 388 (Fed. Cir. 1991). When relying on a device in public use or on sale in the United States, the court can rely on "multiple references to describe a single prior art system for the purpose of showing anticipation." *IP Innovation, L.L.C. v. Red Hat, Inc.*, Order Denying Plaintiffs' Motion for Judgment as a Matter of Law on Infringement and Validity or In the Alternative For a New Trial, Civ. No. 2:07-cv-447, at 9 (E.D. Tex. Oct. 13, 2010) (Rader, J., Chief Judge of the Court of Appeals for the Federal Circuit, sitting by designation).[41]

---

[41] Exhibit M.

### 2. Obviousness under 35 U.S.C. § 103

Prior art also invalidates a patent "if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." 35 U.S.C. § 103(a). As the Supreme Court has explained, "[t]he analysis is objective:"

> Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background the obviousness or nonobviousness of the subject matter is determined. Such secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented.

*KSR Int'l. Co. v. Teleflex Inc.*, 550 U.S. 398, 406 (2007) (quoting *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 17-18 (1966)). *KSR* teaches that the obviousness analysis should be guided by "common sense." *KSR*, 550 U.S. at 420. "[I]n many cases a person of ordinary skill will be able to fit the teachings of multiple patents together like pieces of a puzzle," and no explicit teaching or suggestion to combine prior art is necessary. *Id.* Rather, "if a technique has been used to improve one device, and a person of ordinary skill in the art would recognize that it would improve similar devices in the same way, using the technique is obvious unless its actual application is beyond his or her skill." *Id.* at 417.

Under *KSR*, a trivial combination of prior art elements used according to their known function is unpatentable. *Id.* Such is the case here.

## B. The "Invention" Claimed in the '982 Patent

As the specification explains, '982 patent is about a computer interactive "isometric exercise system." The specification (i.e., the patent's text and drawings) contrasts isometric

exercise with more "conventional" forms of exercise "where a user's muscles are moved under resistance through a selected range of motion."[42]

The '982 patent describes two "preferred embodiments" of the invention. A preferred embodiment is the inventor's preferred way of practicing the invention at the time of the patent application. The first "preferred embodiment" is shown in Figure 1 of the patent.




**Fig. 1 (Annotated)**

Central to the invention is something the applicant called an "effector." The "effector" is an object that the user applies force against to perform isometric exercise. In Figure 1 above, the effector is an "elongated" and "generally cylindrical" rod" with two sensors.[43] One sensor measures microscopic bending forces "in a generally horizontal plane about a horizontal axis X," while the second sensor measures similarly tiny bending deflections "about a vertical axis Y."[44] The patent's figure 1 has been redrawn in use below for clarity.

---

[42] Exh. A, '982 Patent, col. 1, lns. 22-23.
[43] '982 patent, col. 5, lns. 38-54.
[44] *Id.*, col. 6, lns. 13-16.



**Figure 1 Embodiment During Operation**

The sensors are connected to a processor.[45] The processor contains a "data processing module" that receives electrical signals from the sensors caused by an application of force to the effector, and "converts" the signals into information that is "indistinguishable" from the output of a standard peripheral device, like a mouse or joystick.[46] The Figure 1 embodiment generally corresponds to a prototype of the invention assembled by the named inventor, Mr. Feldman, shown below.




**Fig. 1 Prototype**

The second preferred embodiment of the '982 patent is shown in the patent's Figure 2. The embodiment uses a "cockpit" configuration, which is described as useful for flying and driving type games.[47]

---

[45] *Id.*, col. 6, lns. 30-33.
[46] *Id.*, col. 4, lns. 34-43; Col. 6, lns. 36-39.
[47] *Id.*, col. 11, lns. 43-63.




**982 patent, Fig 2 (Annotated)**

The Figure 2 device "includes a set of elongated and generally cylindrical effector bars." The bars form a unmovable "T-type" handle-bar "for manipulation by a user."[48]

To operate the system, the user sits in the seat and places her hands on the handle bars.[49] As in the embodiment of Figure 1, a sensor measures microscopic bending resulting from the force applied by the user to the effector bars and provides data that is used to update a software application such as a game running on the host computer.[50]

The '982 patent contains 28 "claims" – numbered sentences that are required to particularly describe "the subject matter which the applicant regards as his invention." 35 U.S.C. § 112. Because the claims "measure the invention," *SRI Int'l v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107, 1121 (Fed. Cir. 1985), and define the boundaries of the patent, *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc), the subject matter described by the claims is the focus of any invalidity analysis.

[48] *Id.*, col. 8, lns. 10-13.
[49] *Id.*, col. 11, lns. 21-25.
[50] *Id.*, col. 11, lns. 25-40.

Claims 1 and 9 are "independent" claims.[51] Claim 1-8, 17-19, 23, 24 and 27 are "system" claims; that is, they describe an apparatus or product. Each system claim has a corresponding "method" claim describing the use of the apparatus described each system claim. A one-to-one relationship exists between the system and method claims of the '982 patent, as depicted in the "claim tree" shown on the right. In other words, the methods of claims 9-16, 20-22, 25, 26, and 28 would have been obvious to a person having ordinary skill in the art in view of the structures described by the system claims.[52] Thus, a prior art reference that anticipates or renders obvious one of the system claims therefore also invalidates the corresponding method claim.[53]

U.S. Patent 7,121,982 Claim Tree




**C. The '982 Patent is Invalid for Anticipation**

Although discovery is still underway, the information located so far shows that the asserted '982 patent claims are anticipated in view of *at least* the following prior art references:

- The Interactive Video Exercise System ("IVES"), publically demonstrated at the RESNA '98 Conference, anticipates claims 1-2, 4-6, 8-10, 12-14, 16-23, 25, and 27-28.

- A publication describing the IVES system, Interactive Video Exercise System for Pediatric Brain Injury Rehabilitation, RESNA '98, pp. 78-80 (June 26-30, 1998) (the "Dang et al." publication) anticipates claims 1-2, 4-6, 8-10, 12-14, 16-23, 25, and 27-28.

---

[51] A claim can be "independent" or "dependent." 35 U.S.C. § 112 ¶ 3. Independent claims are self-contained, while dependent claim incorporate the requirements of an earlier claim and add further requirements for the invention. 35 U.S.C. § 112, ¶ 4.
[52] Rawls Decl. ¶¶ 39-40.
[53] *Id.*

- Suzuki ’745 (Japanese Patent App. Pub. No. H7-213745) anticipates claims 1-2, 4-5, 7-10, 12-13, 15-17, 19-20, and 22-28.
- Brawne (U.S. Patent No. 5,805,138) anticipates claims 1-2, 4-10, 12-17, 19-23, and 25-28.
- Yamashima (Japanese Patent App. No. 2001-178845) anticipates 1-2, 4-6, 9, 10, 12-14, 19, 22, 24, and 26.

The invalidity in view of the above prior art is detailed in the Rawls Expert report. Thus, at least an issue of fact exists, and the Court should reject IA Labs’ Motion.

### 1. The IVES system Anticipates the Claimed Invention

The Interactive Video Exercise System (“IVES”) was a device created by Tom Dang, David Brennan and Melanie Brown, a group of medical researchers, and was displayed at the Rehabilitation Engineering and Assistive Technology Society of North America (RESNA) conference in June of 1998.[54] The project was described in an article entitled “Interactive Video Exercise System for Pediatric Brain Injury Rehabilitation”, published in the Proceedings of the RESNA Annual Conference, June 1998 (“Dang”).[55]

The IVES device was available for use by the public at the National Rehabilitation Hospital in Washington, DC, during RESNA ’98.[56] No attempts were made to restrict access to the IVES device, and no person who viewed or used IVES was asked to sign a confidentiality agreement.[57] The IVES device is therefore prior art to the ’982 patent under 35 U.S.C. § 102(a) and (b). Because the IVES device is not a patent or printed publication, that device could not be submitted to the USPTO in the reexamination. As a result, even if a reexamination estoppel

---

[54] Rawls Report ¶ 122.
[55] Exh. 9 to Peterson Decl.
[56] *Id.*
[57] *Id.*

were in effect (which it is not), Nintendo would not be precluded from relying on the IVES device to prove anticipation at trial.




**Interactive Video Exercise System (IVES)**

The Expert Report of Mr. Lee Rawls explains the IVES device, based both upon the Dang article, and upon other photo's and illustrations prepared by the devices' maker.[58] An illustration of IVES from the Dang article is shown above at right, and the video screen from the IVES device is shown above at left. The IVES devices "combine[s] virtual reality with an isometric exercise device."[59] Of course, that combination was a primary focus of the '982 patent. The IVES device connected an "isometric test apparatus" with a Nintendo game controller, and was used to provide therapy to children with brain injuries. During use, the player patient sits on the chair shown above, with their legs strapped to immovable sensing devices called "load cells." A modified "load platform" (called a "foot box" above) supports the user's feet.[60]

---

[58] Mr. Rawls is an expert in biomechanics and the design of physical therapy exercise equipment. Rawls Decl. ¶¶ 1-3. He was the Vice President of Engineering and R&D for the exercise company StairMaster for nearly ten years, and is currently a partner in a mechanical engineering and design firm engaged in product development and design.

[59] '982 Patent, col. 3 lns. 21-59.

[60] A "load platform" (also called a "force platform") is used by exercise physiologists and other researchers to study force patterns occurring in the foot during, for example, standing, walking, dancing or jogging. Rawls Report ¶¶ 175-179; Rawls Decl. ¶ 13.

Sensors, labeled "LC1" and "LC2" above, are attached to the chair and the load platform.[61] The sensors are "load cells," which are off-the-shelf components that convert force into an electrical signal using strain gauges and a deformable piece of metal.[62] The children who are the player-patients play the Nintendo game while trying to strain their legs and feet. The sensors measure isometric extensions of the user's knee, that is, they measure the extremely tiny movement of the load cells occurring when the child strains to move their legs.[63] The isometric exercise controls the game. In that way, the children have fun while undergoing tedious therapy.

The values from the LC1 and LC2 sensors are transferred to a Super Nintendo Entertainment System to control operations of a video game.[64] The modified Nintendo controller for that system is shown below:




**IVES "Signal Processing Circuitry" (Exhibit 9)**

The IVES device used two "super-mini," single-axis load cells made by Interface, Inc.[65] This type of load cell is an S-shaped load cell (part of the S-shaped load cell can be seen in the picture below, taken of the IVES device that was located during this litigation). The central

---

[61] Rawls Report ¶¶ 136-139.
[62] *Id.*
[63] *Id.*
[64] Rawls Report ¶ 144.
[65] Dang at 79; Exhibit 4 to Peterson Decl., Declaration of Lee Rawls in Support of Nintendo's Comments Regarding Plaintiff's Response to Non-Final Action ("Rawls Reexam. Decl.") ¶¶ 4-6.

portion of one of these load cells is elongated, and strain gauges are attached that measure the deformation of the elongated central portion.[66]



**IVES Single-Axis Load Cell (NI0011188)**



**Rawls Expert Report, P. 43**

Although the description contained in the Dang article by itself anticipates the ’982 patent, the article is a short summary, and does not provide many relevant details about the operation of IVES that are explained in the Rawls report and will be presented at trial. During discovery, Nintendo consulted with Mr. Dave Brennan,[67] one of the designers of the IVES system, and collected detailed contemporaneous documentation regarding IVES.[68]

Mr. Brennan’s testimony, and the IVES documents, notebooks, photographs and other primary source material located by Mr. Brennan, provides additional detail describing how the IVES device functions.[69] Based on this material (which the Patent Office was unable to consider), Mr. Rawls explained that, under a reasonable construction of the claims of the ’982 patent, the IVES device anticipates every asserted claim.[70]

---

[66] Rawls Reexam. Decl. ¶ 6.
[67] Nintendo Suppl. Rog Resp. at 34. IA Labs previously noticed Mr. Brennan’s deposition for late December, but canceled the deposition a week before the scheduled date.
[68] Exh. 8 to Peterson Decl. (IVES presentation, photographs and notebooks).
[69] *See e.g. Id.* at 11 (close-up photo of single-axis load cell), 12 (slide describing EMG collection and signal processing circuitry), 14 (LabView screenshots).
[70] Rawls Report ¶¶ 125-154.

Summary judgment on Nintendo's Section 102 affirmative defense and counterclaim is precluded by the evidence demonstrating that the IVES device publicly demonstrated at RESNA '98 anticipates every asserted claim of the '982 patent.[71]

### 2. The Suzuki Publication Anticipates the Claimed Invention

The Suzuki[72] patent describes a device that is essentially a force platform modified to function as a movement-controlled joystick or mouse for use with a personal computer.[73] The device is then used to simulate sports, such as skiing, snowboarding and skateboarding. The device includes a support board (number 32 in figure 1 below) on which the user stands.




Figure 1




Figure 6

At least two "S-shaped" load cells with strain gauges are attached to the platform's frame. The elongated portions of the load cells are bolted to the front and left side of the frame (numbers 114

[71] A claim by claim comparison of IVES and the '982 patent is provided as Exhibit B to this opposition brief.
[72] Exh. 10 to Peterson Decl., Suzuki '745 (JP Laid Open Patent App. Pub. No. H7-213745). Suzuki '373, a related patent application, is relied upon to demonstrate the inherent technical characteristics of Suzuki '745. Exh. 11 to Peterson Decl., Suzuki '373 (JP Laid Open Patent App. Pub. No. H6-282373).
[73] Rawls Report ¶¶ 155-172.

and 115 in Figure 6 above).[74] The load cells can also be seen in position in the side-view of the assembled device below:




**Figure 5 (load cells highlighted)**

When the user shifts their body weight while standing on Suzuki's support board, the electrical signal generated by the shifting weight on the strain gauge load cells will change.[75] The device includes a processor that adjusts signals to simulate the output of a standard mouse, and then sends them to a personal computer.[76] A diagram of the internal circuitry is shown at Figure 10.[77]

Applying IA Labs' interpretation of the '982 patent claims, Mr. Rawls concluded that Suzuki anticipates every asserted claim.[78] With the exception of the "sensor" limitation of claims 1 and 9, IA Labs apparently agrees.[79] Regarding the sensor, IA Labs adopted the Examiner's position from the recent Action Closing Position; that is, IA Labs contends that



**S-Shaped Load Cell**
**(elongated central portion marked)**

[74] Rawls Report ¶ 159; Suzuki '373 ¶ [0038].
[75] Rawls Report ¶ 160; Suzuki '745 ¶ [0006].
[76] Suzuki '745, ¶ [0023]. A diagram of the internal circuitry is shown at Figure 10. The design is nearly identical to the '982 patent control circuit shown in Figure 3.
[77] Suzuki '373 at page 25. The circuit design is nearly identical to the exemplary "control circuit" shown in Figure 3 of the '982 patent.
[78] Rawls Report ¶¶ 155-172.
[79] IA's most recent interrogatory responses adopt the PTO examiner's positions in the reexamination concerning Suzuki by reference. Exhibit 19 to Peterson Decl ("IA Suppl. Resp.") at 10 (incorporating Examiner's remarks in ACP regarding Suzuki). In the recent Action Closing Prosecution in the '982 patent reexamination, the PTO examiner rejected IA Labs' arguments that Suzuki does not teach the "processor" and "peripheral" elements of independent claims 1 and 9. The Examiner believed, however, that Suzuki does not disclose measuring the deformation of an "elongated rod."



14372-0080/LEGAL20826400.7

Suzuki does not disclose measuring the deformation of an "elongated rod." As Mr. Rawls explains, however, the S-Shaped load cells used by Suzuki (and the IVES system above) include an elongated central portion that falls within IA Labs' own proposed construction of elongated rod.[80] To avoid anticipation in view of Suzuki, IA Labs has therefore adopted a narrow interpretation of the phrase "elongated rod." However, if the Court adopts the claim interpretation of IA Labs' expert witness, Mr. Ben Bederson, Suzuki contains every feature claimed in the '982 patent and invalidates those claims.[81] This precludes summary judgment of "no anticipation."

**3. The Brawne Patent Anticipates the Claimed Invention**

U.S. Patent No. 5,805,138 to Brawne, entitled, "Gross Motion Input Controller for a Computer System," was issued on September 8, 1998.[82] The Brawne patent is therefore prior art to the '982 patent under 35 U.S.C. § 102(b). Brawne described a large "joystick" for use with a PC (shown below). The purpose of the Brawne development was to provide a large input device for young children that that does not require fine motor system development to operate.




FIG. 2B

---

[80] IA's expert, Mr. Bederson, construes "elongated rod" as a "straight piece of material that has a greater length than its width and height." Rawls Report ¶¶ 158-159.

[81] A claim by claim comparison of Suzuki and the '982 patent is provided as Exhibit C to this opposition brief.

[82] Exhibit 14 to Peterson Decl. ("Brawne").

**Brawne, Fig. 2b**

In use, a child sits on the surface labeled 216 above and grips one or more of the handles 210, 212 or 214.[83] The user attempts to move the handles, which causes displacement of the central tube (labeled 200).[84] The forces applied by the user are detected by strain gauge sensors (labeled 222-236) mounted inside the hollow tube 200 as shown in Figures 2E below.[85] The device includes circuitry that converts the signals received from the strain gauges into messages that "resemble the data messages from a digital type joystick" for sending to a PC.[86]




**Figure 2E**

The Brawne patent anticipates claims 1-2, 4-10, 12-17, 19-23, and 25-28 of the '982 patent.[87] This conclusion is based on the expert testimony of Mr. Rawls and Dr. Anthony Bull, contained in declarations submitted with the reexamination request. In the reexamination proceeding, the Examiner rejected all of IA Labs' arguments for patentability over Brawne, with

[83] Brawne, 18:14-26.
[84] *Id.*
[85] *Id.* 13:32-56.
[86] *Id.* 14:15-32.
[87] A claim by claim comparison of Brawne and the '982 patent is provided as Exhibit D to this opposition brief.

one exception.[88] The Examiner concluded that because the handles of Brawne pivot relative the base 216 on which the user sits, the "effector" is not "fixedly secured."

The Examiner's interpretation of "fixedly secured" is contrary to the uncontroverted testimony of Messrs. Rawls and Bull concerning Brawne's disclosure to a person having ordinary skill in the art.[89] The Examiner's "fixedly secured"[90] interpretation is also narrow, and lacks any foundation in specification or file history of the '982 patent. Contrary to the Examiner's approach, the PTO is required to apply the broadest reasonable meaning of the words of the claims in their ordinary usage. *See also In re Morris*, 127 F.3d 1048, 1054-55 (Fed. Cir. 1997).[91] By interpreting the claims broadly during reexamination, the PTO reduces the possibility that a claim will later be interpreted more broadly than is justified. *Id.* The Examiner's application of a narrow construction of "fixedly secured" tailored to confirm the '982 patent over Brawne is contrary to the PTO's broadest reasonable interpretation requirement, and thus, will be a subject of any appeal. It also shows how a jury could reasonably reach the opposite conclusion.

At a minimum, genuine issues of material fact exist concerning what Brawne discloses to a person having ordinary skill in the art. These issues preclude summary judgment of no anticipation.

---

[88] Exhibit 16 to Peterson Decl.., Action Closing Prosection ("ACP") at 16-21 (agreeing with Nintendo that Brawne discloses the "sensor," "peripheral," "virtual reality scenario," and "manipulation" elements of independent claims 1 and 9 and the elements of dependent claims 2, 3, 10 and 11).
[89] Exhibit 5 to Peterson Decl., Declaration of Dr. Bull in Support of Request for Reexamination. ("Bull Decl.") ¶¶ 10-18; Rawls Reexam. Decl. ¶¶ 5, 8.
[90] ACP at 35 ("The term 'fixedly secured'" means "a connection that the two parts secured do not move relative to each other at the point of securement.").
[91] The rationale underlying the "broadest reasonable construction" standard is that a patentee has the ability to amend its claims during this reexamination proceeding to make explicit what it may contend is implicit. *See* 37 C.F.R § 1.555(b); MPEP § 2111.

### 4. The Yamashima Publication Anticipates the Claimed Invention

The Yamashima patent application (No. 2001-178845),[92] entitled "Limb Capacity Loss Prevention Device," was published on July 3, 2001, more than a year before the filing date of the '982 patent. Yamashima is therefore available prior art to the '982 patent under 35 U.S.C. §102(a) and (b). The key figures from Yamashima are below:







**Figure 6** **Figure 11 (sensor highlighted)**

Yamashima describes an exercise device in the form of a chair (illustrated in figure 6 above). Two elongated handles (circled above) protrude upwards at the forward end of each armrest.[93] A rigid metal "strain plate" (24) is mounted inside each handle, as shown in figure 9 above.[94] Strain sensors (labeled S2 above) measure "the extent of deformation" during use and transmit that information to a personal computer.[95] The information is used to operate the PC by playing games or sending and receiving information over the Internet.[96]

[92] Exhibit 15 to Peterson Decl.
[93] Yamashima ¶ [0027].
[94] *Id.*
[95] *Id.* ¶ [0020].
[96] *Id.* ¶ [0029].

Yamashima therefore describes a peripheral under IA Labs' proposed construction. The device includes an "effector" with an elongated rod. Sensors affixed to the rod measure its deformation during isometric exercise by the user. The information is transmitted to a PC, and can be used to play a computer game. Yamashima alone thereby anticipates claims 1-2, 4-6, 9-10, 12-14, 19, 22, 24, and 26 of the '982 patent.[97]

IA Labs contends that Yamashima does not teach the "processor," "peripheral," "sensor" and "effector" limitations of claims 1 and 9 of the '982 patent.[98] IA Labs is mistaken—Yamashima expressly or inherently discloses these features. Notably, the Examiner in the reexamination rejected many of IA Labs' arguments, and expressly concluded that Yamashima discloses a fixedly secured effector including an "elongated rod" and a sensor that measures the deformation of that rod.[99] These are features that IA Labs contends set the '982 invention apart from the prior art.

Accordingly, genuine issues of material fact exist concerning whether Yamashima expressly or inherently anticipates the asserted '982 patent claims. Those issues further preclude summary judgment.

**D. The '982 Patent is Invalid for Obviousness**

Although fact and expert discovery are incomplete, Nintendo presently contends that the asserted claims of the '982 patent are invalid for obviousness based on at least the following combinations of prior art.

- The Li patent in combination with Berme or other prior art references.

---

[97] A claim by claim comparison of Yamashima and the '982 patent is provided as Exhibit E to this opposition brief.
[98] IA Labs Response to Non-Final Office Action at 23-25.
[99] The Examiner decided, however, that Yamashima does not disclose a separate "processor" that controls a "virtual reality scenario." This decision is based on a misunderstanding of Yamashima, which inherently discloses both limitations. Nintendo anticipates addressing this issue during forthcoming expert discovery.

- The Interactive Video Exercise System ("IVES") device demonstrated at RESNA '98, in combination with Berme and other prior art references.
- Suzuki in combination with Berme or other prior art references.
- Yamashima[100] in combination with Li or other prior art references.
- Brawne in combination with Yamashima or other prior art references.

This art shows that the subject matter of the asserted claims would have been obvious to a person having ordinary skill in the art at the time of the alleged invention in light of at least the foregoing prior art disclosures. The Court therefore should reject IA Labs' motion for summary judgment of non-obviousness.

**1. Li and Berme Render the Patent Obvious**

U.S. Patent No. 6,225,977, entitled "Human Balance Driven Joystick to Dr. John C. Li (the "Li" patent)[101] discloses using a modified balance platform as a user-input device to a PC.[102] The force detection platform (shown in figures 1 and 4 below) detects "small shifts in the center of gravity of the individual standing on the platform and electronically digitizes this information to convert it to an analog signal."[103] The signals are then "fed into the generic joystick port of a personal computer and can be used to drive any existing software that incorporates use of a standard joystick."[104]

---

[100] JP Laid Open Patent App. No. 2001-178845.
[101] Exh. 7 to Peterson Decl.
[102] Li, Abstract: "A method and apparatus for driving a computerized cursor through the translation of weight shifts of the human body."
[103] Li, 2:29-39.
[104] *Id.*




**Li, Figures 1 and 4**

The invention thereby allows a user to control a computer program, such as a PC game, with body movement.[105] The system controls games such as skiing, snowboarding and skateboarding.[106]

The platform of the Li patent uses strain gauge sensors to detect changes in the user's center-of-gravity.[107] As shown in Figure 6 below, a "conversion box" attached to the device processes the signals generated by the strain gauges into data that simulates the output of a standard PC joystick.[108] Li also discloses using a secondary hand-held joystick that is plugged directly into the "conversion box" processor.[109]

[105] *Id.* 4:13-15.
[106] *Id.* 2:40-46.
[107] *Id.* 4:23-30.
[108] *Id.*
[109] *Id.* 6:40-59, Figures 14-16.




**Li Patent, Figure 6**

The Li patent does not describe the exact mechanical arrangement of the strain gauges or provide any technical details regarding the force platform. Although the patent mentions a Neurocom balance platform,[110] it does not require any particular load cell configuration. Nintendo is evaluating the Neurocom platforms during discovery.

Mr. Rawls, an expert in the field of biomechanics, exercise physiology and mechanical engineering, has explained that the Li patent expressly discloses every element of the asserted ’982 patent claims under IA Labs’ proposed claim construction, except for the “elongated rod.”[111] Mr. Rawls further explains, however, that it would have been obvious to a person having ordinary skill in the art at the time of the ’982 patent to combine the Li device with a load cell that has an elongated rod.[112]

Nintendo recently discovered a new prior art patent that describes “measuring the deformation of an elongated rod”: U.S. Patent No. 6,389,883 to Necip Berme et al. (“Berme”).[113] The Berme patent describes a “balance platform” – another common name for a force platform.

---

[110] Li, 1:44-62.
[111] Rawls Report ¶¶ 187-191. Nintendo anticipates providing further expert analysis related to Mr. Li’s work in accordance with the Court’s scheduling order.
[112] Rawls Decl. ¶¶ 16-21.
[113] Exh. 6 to Peterson Decl..

As Mr. Rawls explained in his preliminary expert report, force platforms are well-known in the art.[114] They typically use load cells with strain gauges or other sensors to measure the movements of the user.[115]

The force platform of Berme, shown below, is used for "analyzing and measuring the balance, functional capability and stability" of a person standing on the platform.[116] This is a traditional function of balance platforms.[117]




Berme is significant, because the patent describes measuring the deformation of an "elongated" metal bar using strain gauges. The elongated rod (36) is shown in Figs. 3 and 5 of the patent (reproduced below).



FIG–3



FIG–5

[114] Rawls Report ¶¶187-191. Rawls Decl. ¶ 13.
[115] *Id.*
[116] Berme, 1:30-37.
[117] Rawls Report ¶¶ 175-179; Rawls Decl. ¶ 13.

Berme therefore teaches measuring the deformation of an elongated rod in a force platform. According to the Examiner, this mechanical detail is the only distinction between the ’982 patent and the closest prior art of record in the reexamination (Dang and Suzuki).

Combining Li to with the elongated rod of Berme would have been obvious to a person having ordinary skill in the art.[118] Li uses a force platform; Berme describes a particular force platform arrangement. Using Berme’s force platform in the system described Li is an obvious use of Berme, especially since it is used according to its intended function.[119] Building Li in this manner would also improve the system of Li by providing a highly portable, but accurate, force platform with a low profile (the advantages of Berme over other prior art force platforms).[120]

Before the discovery of the Berme patent, Mr. Rawls identified four other references, Murata,[121] Izumi,[122] Lee,[123] and Nordstrom,[124] as teaching “elongated rod load cells” (depicted below) that a person of ordinary skill would have combined with Li to arrive at the claimed invention.[125] Each combination renders the patent invalid.










[118] Rawls Decl. ¶¶ 16-21; Rawls Report ¶ 189.
[119] Rawls Decl. ¶¶ 17-18.
[120] Rawls Decl. ¶¶ 19-21; Berme, 1:31-36.
[121] Exh. 20-21 to Peterson Decl.
[122] Exh. 22 to Peterson Decl.
[123] Exh. 23 to Peterson Decl.
[124] Exh. 24 to Peterson Decl.
[125] Rawls Report ¶¶ 190-191.

**Murata** **Nordstrom**







FIG. 4

**Izumi** **Lee**

Under IA Labs' interpretation of the '982 patent, the claimed invention would have been obvious to a person having ordinary skill in the art in the field at least in view of Li and Berme.[126] This evidence of obviousness precludes summary judgment.

### 2. Dang and Berme Render the Patent Obvious

In the Examiner's Action Closing Prosecution, the Examiner asserted that Dang does not anticipate or render obvious the '982 patent, because the Examiner believed Dang's "S-shaped" load cell do not include an "elongated rod."[127] Although the rectangular portion of an S-Shaped load cell is elongated, the Examiner believed the S-shape piece is not "an extended or lengthened stick, shaft or staff" (the Examiner's definition of "elongated rod)." Based on only this distinction, the Examiner issued his non-final determination that the '982 patent is patentable over Dang.[128]

The Examiner made this determination without the benefit of Berme, a patent that clearly describes a load cell including an elongated rod under the Examiner's interpretation of the

---

[126] Rawls Decl. ¶¶ 16-21; Rawls Report ¶ 191.
[127] ACP at 5.
[128] *Id.* at 36.

phrase.[129] Combining the load cell of Berme with the IVES device (e.g. by using the Berme balance platform instead of the IVES "foot box") would have been a trivial variation of the prior art, and well within the skill of a person having ordinary skill in the art.[130]

### 3. Suzuki and Berme Render the Patent Obvious

The Examiner also believed the '982 patent was patentable over Suzuki[131] based on his conclusion that Suzuki does not disclose measuring the deformation of an "elongated rod."[132] This supposed defect of Suzuki is again resolved by the newly-discovered Berme patent. The combination of Suzuki and Berme would have been obvious – both references are directed to a force platform that uses load cells to detect user weight shifting.[133] Like the Li patent, combining Suzuki with the load cell of Berme is a trivial combination of prior art elements used according to their known function,[134] *KSR*, 550 U.S. at 420, and thus renders the '982 patent obvious under Section 103.[135] This precludes summary judgment.

### 4. Yamashima Renders the Patent Obvious

The Yamashima publication alone anticipates the claimed invention.[136] IA Labs apparently contends that Yamashima does not expressly describe the "processor" and "virtual reality" limitation of claims 1 and 9. To the extent Yamashima does not inherently disclose

---

[129] Rawls Decl. ¶¶ 10-13.
[130] Rawls Decl. ¶¶ 28-31. A claim by claim analysis of the IVES in combination with Berme is provided as Exhibit J.
[131] Exh. 10 to Peterson Decl., Suzuki '745 (JP Laid Open Patent App. Pub. No. H7-213745); Exh. 11 to Peterson Decl. Suzuki '373 (JP Laid Open Patent App. Pub. No. H6-282373)
[132] ACP at 32-33.
[133] Rawls Decl. ¶¶ 22-27.
[134] *Id.* ¶¶ 23-27
[135] A claim by claim analysis of Suzuki in combination with Berme, as well as other prior art, is provided as Exhibit G.
[136] Yamashima Section 102 Invalidity Chart (Exhibit E).

those features, incorporating the claimed "processor" and "virtual reality scenarios" would have been obvious to a person having ordinary skill in the art.[137]

Modifying the Yamashima device to include the processor expressly disclosed by, e.g., Li or Suzuki, would have been obvious to a person having ordinary skill in the art.[138] Providing an embedded processor that converts strain gauge output into messages that simulate the output of a PC joystick (as in Li) or mouse (as in Suzuki) would improve the usefulness of Yamashima.[139] This improvement would allow the device to be used with a variety of computer systems in the manner of a "standard" peripheral device as disclosed by Li and Suzuki.[140]

Using Yamashima's exercise device to control a "virtual reality" scenario also would have been obvious. Mr. Feldman did not invent combining exercise systems and virtual reality. Many examples of using exercise systems to control virtual reality scenarios exist in the prior art. One example is U.S. Patent No. 5,591,104, entitled "Physical Exercise Video System," to Bryan D. Andrus et al. ("Andrus").[141] The Andrus patent provides a detailed disclosure of a system (depicted below) that combines virtual reality and exercise equipment.

[137] Rawls Decl. ¶¶ 33-38.
[138] *Id.*
[139] *Id.* ¶¶ 37-38.
[140] *Id.*
[141] Exhibit 18 to Peterson Decl. The Expert Report of Dr. Ian Bogost (Exh. 3 to Peterson Decl.) discusses other examples of prior art devices combining exercise with virtual reality and video games.




For example, Andrus describes simulating a "bicycle road race" using the Figure 1 system.[142] In the example, the speed of the user's pedaling changes the apparent speed of a bicycle racer in the game.[143] The user steers the virtual bicycle on the screen using controls labeled 32a and 32c above. It would have been obvious to a person having ordinary skill in the art to use a virtual reality exercise system, such as the system described by Andrus, in combination with Yamashima's device to arrive at the isometric exercise system claimed by the '982 patent.

For this additional reason, the '982 patent is invalid for obviousness, and the Court should reject IA Labs' motion for partial summary judgment.[144]

### 5. Brawne Renders the Patent Obvious

The Brawne patent alone anticipates the claimed invention of the '982 patent.[145] IA Labs apparently contends that Brawne fails to disclose measuring the deformation of a "fixedly

---

[142] Andrus, 22:44-23:35.
[143] *Id.* 22:62-66.
[144] A claim by claim analysis of Yamashima in combination with Li, Suzuki and other prior art references is provided as Exhibit H.
[145] *See* Brawne Section 102 Invalidity Chart (Exhibit D).

secured" effector including an "elongated rod." This is the sole distinction raised by the Examiner in the reexamination between the patented invention and the Brawne patent.[146]

Brawne alone renders the '982 patent obvious.[147] Although the Examiner's construction of "fixedly secured" in the reexamination is overly narrow as detailed above, even accepting the Examiner's definition, a person having ordinary skill in the art at the time of the invention would have arrived at the claimed invention merely by increasing the resistance of the hollow tube 200. As Mr. Rawls explained to the Examiner in the reexamination, this minor modification would have been obvious.[148] The Examiner's conclusion to the contrary is at odds with the uncontroverted testimony of Mr. Rawls and the prior art teachings of a fixedly secured effector (e.g., Yamashima, Dang, Suzuki).[149]

Brawne renders obvious every asserted claim when viewed alone or in combination with the Peterson, Poulton, Wolff, Braeunig, and Rosenberg patents. This precludes summary judgment of no invalidity.[150]

## VI. IA LABS' REQUEST FOR RELIEF IS OVERLY BROAD

IA Labs' requested relief is also overbroad: The proposed order submitted with IA Labs' motion asked the Court to strike Nintendo's Section 112 defenses. It did so without justification or explanation. The proposed order also erroneously asked the Court to declare the patent "valid." Both requests are erroneous as a matter of law and unsupported by any facts or argument in the accompanying submission.

---

[146] ACP at 16-21.
[147] A claim by claim analysis of Brawne in combination with Peterson, Poulton, Wolff, Braeunig, and Rosenberg submitted in the '982 patent reexamination is attached as Exhibit I.
[148] Rawls Reexam. Decl. ¶ 8.
[149] *Id.*
[150] Other grounds for invalidity of the '982 patent are still under investigation by Nintendo and its expert witnesses and consultants or have been omitted from this brief in the interest of brevity. As stated in the Declaration of Tyler C. Peterson submitted with this brief, Nintendo anticipates identifying additional grounds for invalidity and providing expert analysis regarding the same in accordance with the Court's scheduling order.

### A. IA Labs' Erroneously Asks the Court to Strike Nintendo's Section 112 Invalidity Defenses

The focus of IA Labs' motion is Nintendo's Section 102 and 103 defenses. Based on its faulty estoppel premises, IA Labs contends Nintendo has no evidence of invalidity under Sections 102 and 103. IA Labs' proposed order goes even further, asking the Court to enter judgment against Nintendo regarding all of Nintendo's counterclaim and affirmative defense of invalidity.

Nintendo's counterclaim and affirmative defense are not, however, limited to just Sections 102 and 103. Nintendo also contends that the '982 patent is invalid for failure to comply with the disclosure requirements of 35 U.S.C. § 112. The basis for Nintendo's counterclaim, *inter alia*, is that the named inventor failed to disclose the best mode of practicing the invention as required by the statute.[151] The '982 patent is also invalid under § 112 for failure to comply with the "written description," "enablement," and "indefiniteness" requirements of that statute.[152] Each of Nintendo's Section 112 defenses is explained in Nintendo's interrogatory responses.[153]

Nintendo's best mode contentions are based on the deposition testimony of the named inventor, Phil Feldman, the patent itself, and the expert opinion testimony of Lee Rawls.[154] Although Nintendo has served interrogatories on Plaintiff IA Labs seeking the basis for IA's contention that the '982 patent is valid under Section 112, to date IA Labs has refused to provide sufficient responses.[155] Plaintiff's invitation to strike Nintendo's meritorious Section 112

---

[151] Nintendo Suppl. Rog Responses, at 23-26; Rawl's Report, ¶¶ 199-207.
[152] Amended Answer and Counterclaims, ECF No. 51-2 ¶¶ 79-80.
[153] Nintendo Suppl. Rog Responses at 17-26
[154] *Id.* at 23-26.
[155] Exhibit 17 to Peterson Decl., Plaintiff's Supplemental Responses to Interrogatory Nos. 11 and 21, at 9-10.

invalidity defenses is inappropriate and unsupported by IA Labs' motion papers. IA's proposed order cannot be legitimately entered.

### B. Patents Are Not Declared "Valid"

IA Labs also erroneously asked the court to declare that the '982 patent is "valid under 35 U.S.C. §§ 102 and 103."[156] However, "'[c]ourts do not find patents "valid," only that the patent challenger did not carry the "burden of establishing invalidity in the *particular case* before the court."'" *In re Swanson*, 540 F.3d 1368, 1377 (Fed. Cir. 2008) (quoting *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1429 n.3 (Fed. Cir. 1988)). IA Labs' request for a declaration of validity is improper.

## VII. CONCLUSION

IA Labs' premature Motion relies on a legally unsupported interpretation of the reexamination statute, and turns a blind-eye to the compelling prior art supporting Nintendo's invalidity defense. The mountain of evidence showing invalidity demonstrates that genuine issues of material fact exist. The Court should deny IA Labs' untimely request for partial summary judgment of no invalidity.

Dated this 16th day of May, 2011:

/s/

Jerry A. Riedinger, *pro hac vice*
Tyler C. Peterson, *pro hac vice*
Stevan R. Stark, *pro hac vice*
PERKINS COIE LLP
1201 Third Avenue, Suite 4800
Seattle, WA 98101-3099
Telephone: 206.359.8000
Facsimile: 206.359.9000
Email: JRiedinger@perkinscoie.com

[156] IA's Brief at 10.

M. Celeste Bruce, Bar No. 10710
RIFKIN, LIVINGSTON, LEVITAN & SILVER LLC
7979 Old Georgetown Road, 4th Floor
Bethesda, MD 20814
Tel: (301) 951-0150
Fax: (301) 951-0172 (facsimile)
Email: cbruce@rlls.com

Joseph A. Rhoa, Bar No. 12902
NIXON & VANDERHYE P.C.
901 North Glebe Road, 11th Floor
Arlington, Virginia 22203
Tel: (703) 816-4000
Fax: (703) 816-4100
Email: jar@nixonvan.com

Counsel for NINTENDO CO., LTD. AND NINTENDO OF AMERICA INC.

C. Mark Kittredge, *pro hac vice*
PERKINS COIE LLP
2901 N. Central Avenue, Suite 2000
Phoenix, AZ 85012-2788
Tel: (602) 351-8000
Fax: (602) 351-7000
Email: MKittredge@perkinscoie.com

Terrence J. Wikberg, Bar No. 17978
PERKINS COIE LLP
700 13th Street, N.W., Suite 600
Washington, DC 20005-3960
Tel: (202) 654-6201
Fax: (202) 654-6211
Email: TWikberg@perkinscoie.com

Counsel for NINTENDO CO., LTD. AND NINTENDO OF AMERICA INC.

**CERTIFICATE OF SERVICE**

I hereby certify that on May 16, 2011, I caused the foregoing document to be filed with the Court via the CM/ECF filing system, thereby providing notice of such filing to all counsel of record.

/s/
Tyler C. Peterson, *pro hac vice*
PERKINS COIE LLP
1201 Third Ave., 48th Floor
Seattle, WA 98101
Tel: (206) 359-8129
Fax: (206) 359-9129
Email: TylerPeterson@perkinscoie.com