IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| IA LABS CA, LLC | * | |
| | * | |
| Plaintiff | * | |
| | * | |
| v. | * | Civil No. PJM 10-833 |
| | * | |
| NINTENDO CO., LTD and | * | |
| NINTENDO OF AMERICA, INC. | * | |
| | * | |
| Defendants | * | |

## MEMORANDUM OPINION

IA Labs, CA LLC ("IA Labs") sued Nintendo Co., Ltd. and Nintendo of America, Inc. (collectively, "Nintendo") alleging infringement of two patents—U.S. Patent No. 7,121,982 (the "'982 patent") and U.S. Patent No. 7,331,226 (the "'226 patent"). On February 9, 2011, the parties filed a joint status report wherein IA Labs withdrew its claim arising under the '226 patent, indicating that the prior day it had executed a covenant not to sue under that patent. On February 18, 2011, IA Labs filed a statutory disclaimer of the '226 patent. On April 6, 2011, the Court granted Nintendo's Motion to Dismiss the claim of infringement of the '226 patent and set out a briefing schedule for a Motion for Attorneys' Fees under 35 U.S.C. § 285 regarding the '226 patent.[1] Presently before the Court is Nintendo's Motion for Attorney Fees [Docket No. 188] and Nintendo's Motion to Review the Clerk's Order Taxing Costs [Docket No. 228], both relating to the claim of infringement of the '226 patent.

For the reasons that follow, Nintendo's Motion for Attorney Fees [Docket No. 188] is **GRANTED IN PART** and **DENIED IN PART** and Nintendo's Motion to Review the Clerk's Order Taxing Costs [Docket No. 228] is **GRANTED**.

---

[1] IA Labs' continued to pursue its claim of infringement of the '982 patent, and, on February 29, 2012, the Court granted summary judgment for Nintendo on that claim.

I.

IA Labs filed its Complaint in this case on April 2, 2010. On August 3, 2010, Nintendo filed its Answer and Counterclaim, asserting, among other things, that the '226 patent was statutorily invalid. Nintendo amply set out an "on-sale bar" defense and counterclaim in its interrogatory responses and proposed Amended Answer, both filed in September, 2010. On October 21, 2010, IA Labs indicated to Nintendo that it would abandon its claim arising out of the '226 patent. By January 2011, IA Labs had not yet dismissed its claim of infringement of the '226 patent, and Nintendo filed a Motion to Dismiss said claim. Dismissal of the claim, as indicated, came on April 6, 2011.

II.

In patent actions, the Court has discretion to award reasonable attorneys fees to the prevailing party in exceptional cases. 35 U.S.C. § 285. To do so, the Court must find that the prevailing party has proved that the case is exceptional by clear and convincing evidence. *See Forest Labs., Inc. v. Abbott Labs.*, 339 F.3d 1324, 1327 (Fed. Cir. 2003). Exceptional cases typically involve bad faith litigation or inequitable conduct by the patentee in procuring the patent. *See Cambridge Products, Ltd. v. Penn Nutrients, Inc.*, 962 F.2d 1048, 1050-51 (Fed. Cir. 1992). "The prevailing party may prove the existence of an exceptional case by showing: inequitable conduct before the PTO; litigation misconduct; vexatious, unjustified, and otherwise bad faith litigation; a frivolous suit or willful infringement." *Brasseler, U.S.A. I, L.P. v. Stryker Sales Corp.*, 267 F.3d 1370, 1380 (Fed. Cir. 2001) (citing *Hoffman-La Roche Inc. v. Invamed Inc.*, 213 F.3d 1359, 1365 (Fed. Cir. 2000)).

"Absent litigation misconduct or misconduct in securing the patent, sanctions under § 285 may be imposed against the patentee only if both (1) the patentee brought the

litigation in bad faith; and (2) the litigation is objectively baseless." *Eon-Net LP v. Flagstar Bancorp.*, 653 F.3d 1314, 1324 (Fed. Cir. 2011) (citing *Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc.*, 393 F.3d 1378, 1381 (Fed. Cir. 2005)). An inference of bad faith is warranted where the patentee is "manifestly unreasonable in assessing infringement, while continuing to assert infringement in court." *Eltech Sys. Corp. v. PPG Indus., Inc.*, 903 F.2d 805, 811 (Fed. Cir. 1990). "A frivolous infringement suit is one which the patentee knew or, on reasonable investigation, should have known was baseless." *Stephens v. Tech Int'l, Inc.*, 393 F.3d 1269, 1273-74 (Fed. Cir. 2004) (quoting *Haynes Int'l Inc. v. Jessop Steel Co.*, 8 F.3d 1573, 1579 (Fed. Cir. 1993).

### A.

Nintendo argues that this is an exceptional case because IA Labs brought litigation of the '226 patent in bad faith and the litigation was objectively baseless. Nintendo argues that, beyond dispute, the invention of the '226 patent was publicly demonstrated and on-sale more than one year before the patent application was filed, thereby making it statutorily invalid pursuant to 35 U.S.C. § 102(b). Because the persons involved in these invalidating activities were principals of IA Labs, Nintendo argues that IA Labs knew or should have known that the '226 patent was invalid before it commenced the lawsuit. In any event, says Nintendo, Nintendo's Answer and Counterclaim clearly alerted IA Labs to the invalidity issues at least two months before IA Labs indicated that it would drop the claim and six months before it actually did so.

IA Labs argues that there is a presumption that a claim of infringement of a duly granted patent was asserted in good faith. Further, it argues that the litigation cannot have been brought in bad faith, because the "litigation" comprised claims of infringement of two patents,

and the claims relating to the '982 patent proceeded after the '226 patent was dismissed. IA Labs also disputes that it knew or should have known that the '226 patent was invalid and cites to IA Labs' witnesses who testified that the product that was publicly demonstrated and on-sale lacked essential teachings of the '226 patent.

### B.

The Court agrees with Nintendo that reasonable attorneys' fees with respect to the '226 patent claim are warranted under 35 U.S.C. § 285.

First, Nintendo is the prevailing party, as the Court dismissed all claims relating to the '226 patent from the suit, following IA Labs' disclaimer of the patent (which rendered it unenforceable). *See, e.g., Highway Equipment Co., Inc. v. Feco, Ltd.*, 469 F.3d 1027, 1035 (Fed. Cir. 2006); *Inland Steel Co. v. LTV Steel Co.*, 364 F.3d 1318, 1321 (Fed. Cir. 2004); *Ellipse Corp. v. Ford Motor Co.*, 452 F.2d 163, 172 (7th Cir. 1971).

Second, this is an "exceptional" case; IA Labs brought an objectively baseless claim, which the Court finds was brought in bad faith. Interaction Laboratories, Inc.—the original '226 patent holder—developed a product known as the Kilowatt that embodied the invention of the '226 patent. It was sharply apparent that the Kilowatt had been publicly demonstrated at trade shows, disclosed in numerous publications, and offered for sale more than one year prior to the filing of the patent application. Thus, the '226 patent was, without question, statutorily invalid pursuant to the "on-sale bar." *See* 35 U.S.C. § 102(b); *Pfaff v. Wells Elecs., Inc.*, 525 U.S. 55, 67 (1998). Since IA Labs knew of these invalidating activities before it sued Nintendo for infringement, the Court can only conclude that it sued on the '226 patent in bad

faith.[2] *See, e.g., Shelco, Inc. v. Dow Chem. Co.*, 466 F.2d 613, 618 (7th Cir. 1972); *Microstrategy Inc. v. Crystal Decisions, Inc.*, 555 F. Supp. 2d 475, 480 (D. Del. 2008).

The evidence in the record demonstrates that IA Labs was intimately familiar with the many instances where Interaction Laboratories, Inc. publicly demonstrated the Kilowatt. IA Labs' CTO, Greg Merril—also the co-founder and former CEO and President of Interaction Laboratories, Inc.—was personally involved in the on-sale bar activities. Further, IA Labs' Complaint includes numerous details regarding Interaction Laboratories, Inc., confirming that counsel had conducted a comprehensive investigation of its commercial activities. IA Labs does not and cannot dispute that it was aware of the on-sale bar activities. Instead, it argues that certain features of the '226 patent were missing from the Kilowatt. This argument is disingenuous. IA Labs does not actually argue that the '226 patent is valid. In fact, IA Labs took the extraordinary step of disclaiming the patent, implicitly acknowledging its invalidity. For these reasons, the Court finds that IA Labs clearly knew that the patent was invalid when it commenced the litigation. *See, e.g., Interpart Corp. v. Italia*, 777 F.2d 678, 686 (Fed. Cir. 1985) (affirming an award of attorneys' fees where plaintiff knew and failed to disclose to the PTO that it had sold products more than a year prior to the application for patent) (overruled on other grounds); *Hughes v. Novi Am., Inc.*, 724 F.2d 122, 125 (Fed. Cir. 1984) (affirming an award of attorneys' fees where plaintiff knew of patent-barring sales and advertising of the "patented" product).

---

[2] The Court rejects IA Labs' argument that the litigation could not have been brought in bad faith because one of the two claims asserted was viable (although, ultimately, unsuccessful). This ignores the many cases that award attorneys' fees to a party even though that party did not prevail on every claim or defense, and would also lead to the absurd result of granting plaintiffs immunity from fees on any baseless claim, so long as they include a viable claim within the same litigation.

That IA Labs waited more than two months after Nintendo asserted counterclaims of invalidity to inform Nintendo that it would abandon its claim under the '226 patent and four more months to actually do so may be evidence of neglect, but is also evidence of bad faith. *See, e.g., Computer Docking Station Corp. v. Dell, Inc.*, 519 F.3d 1366, 1379 (Fed. Cir. 2008) ("If the patentee prolongs litigation in bad faith, an exceptional finding may be warranted.") (citing *Rohm & Haas Co. v. Crystal Chem. Co.*, 736 F.2d 688, 691 (Fed.Cir.1984)); *Microstrategy*, 555 F. Supp. 2d at 480 (awarding fees where "in the face of clear and convincing evidence of anticipation," the plaintiff "was manifestly unreasonable in neglecting to reevaluate its position and continuing to assert claims under the [anticipated] patent"); *Realtek Semiconductor, Corp. v. Marvell Semiconductor, Inc.*, No. C-04-4265, 2005 WL 3634617, at *5 (N.D. Cal. Nov. 21, 2005) (finding that plaintiff acted in bad faith where, among other things, it continued to pursue the lawsuit after receiving information demonstrating that the patent was invalid).

For the same reason that the patent's invalidity was or should have been manifestly obvious to IA Labs so as to indicate subjective bad faith, "no reasonable litigant could realistically expect success on the merits" and the claim was objectively baseless. *Realtek Semiconductor*, 2005 WL 3634617, at *6 (quoting *Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60 (1993)); *see also MarcTec, LLC v. Johnson & Johnson*, 664 F.3d 907, 916 (Fed. Cir. 2012) (finding that to be objectively baseless for the purpose of attorneys' fees, the case "must have no objective foundation, and the plaintiff must actually know this") (quoting *iLOR, LLC v. Google, Inc.*, 631 F.3d 1372, 1377 (Fed. Cir. 2011)).

### C.

Having determined that this is in fact an exceptional case, "the court must then determine whether an award of attorney fees is appropriate and, if fees are appropriate, the

amount of the award." *Eon-Net LP v. Flagstar Bancorp.*, 653 F.3d 1314, 1323-24 (Fed. Cir. 2011) (citing *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1460 (Fed.Cir.1998) (en banc)). Nintendo seeks a total of $319,752.26 in attorneys' fees and $17,924.82 in litigation expenses. Included in this amount are fees incurred as a result of filing a petition for reexamination before the PTO. IA Labs argues that, even if the Court grants Nintendo's Motion, it should not award fees for this non-mandatory, non-judicial proceeding. Further, IA Labs argues that the hourly rate sought by Nintendo exceeds that permitted by the Local Rules of this Court.

In determining whether to exercise its discretion to award fees, the Court considers a number of factors, such as "the closeness of the case, the tactics of counsel, the conduct of the parties, and any other factors that may contribute to a fair allocation of the burdens of litigation as between winner and loser." *S.C. Johnson & Son, Inc. v. Carter-Wallace, Inc.*, 781 F.2d 198, 201 (Fed. Cir. 1986). Here, given the extent of the effort required to defend against the objectively baseless claim, the Court finds that an award of fees and expenses is appropriate. *See, e.g., Microstrategy*, 555 F. Supp. 2d at 482.

The Court follows the "lodestar" framework and methodology for the calculation of reasonable attorneys' fees, and multiplies the number of hours reasonably expended on the matter by a reasonable hourly rate. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Lyle v. Food Lion, Inc.*, 954 F.2d 984, 988 (4th Cir. 1992). Here, the Court accepts Nintendo's calculation of the number of hours reasonably expended on the matter as a result of IA Labs' baseless claim—including those related to the reexamination proceeding before the PTO—from the commencement of the action through the time that IA Labs orally represented that it would drop this claim. *See Central Soya Co., Inc. v. Geo. A. Hormel & Co.*, 723 F.2d 1573, 1578 (Fed. Cir. 1983) ("We interpret attorney fees to include those sums that the prevailing party incurs in

this

the preparation for and performance of legal services related to the suit."); *see also, e.g., Mathis v. Spears*, 857 F.2d 749, 758 (Fed. Cir. 1988); *Synthon IP, Inc. v. Pfizer, Inc.*, 484 F. Supp. 2d 437, 445 (E.D. Va. 2007); *Howes v. Med. Components, Inc.*, 761 F. Supp. 1193, 1198 (E.D. Pa. 1990). However, the Court declines to award the rates requested. Instead, the Court has recalculated the fees in accordance with the guidelines for hourly rates contained in the Local Rules of this Court. This results in reducing the request for $319,752.26 in attorneys' fees to an award of $218,159.25 in attorneys' fees. The Court awards the total litigation expenses requested, in the amount of $17,924.82.

### III.

In its order dismissing the claim of infringement of the '226 patent, the Court specifically "retained jurisdiction to decide [Nintendo's] request for attorneys' fees under 35 U.S.C. § 285 in connection with the assertion of the '226 patent in this lawsuit" and set forth a briefing schedule for Nintendo to file a "Motion for Attorneys' Fees Under 35 U.S.C. § 285 regarding the '226 patent." Nintendo filed its Motion for Attorneys' Fees in accordance with this schedule and filed a Bill of Costs concurrently. The Clerk denied the Bill of Costs as untimely because it was not filed within 14 days of the entry of judgment, as required by the Local Rules.

Nintendo has filed a Motion to Review the Clerk's Order on the grounds that it understood that the Bill of Costs should be filed together with the Motion for Attorneys' Fees, and both documents were filed within the timeframe set forth in the Court's order. IA Labs counters that the Clerk properly denied the Bill of Costs because it was not covered by the Court's briefing schedule.

While IA Labs is correct that the Court's order setting forth the briefing schedule for the Motion for Attorneys' Fees did not specifically mention the Bill of Costs, the Court

agrees with Nintendo that the two naturally go together. That said, the costs detailed in the Bill of Costs duplicate the expenses requested and granted in the Motion for Attorneys' Fees. Accordingly, the Court grants the Motion to Review the Clerk's Order, but declines to grant any additional costs.

## IV.

For the foregoing reasons, Nintendo's Motion for Attorney Fees [Docket No. 188] is **GRANTED IN PART** and **DENIED IN PART** and Nintendo's Motion to Review the Clerk's Order Taxing Costs [Docket No. 228] is **GRANTED**.

A separate Order will **ISSUE**.

/s/
_____
PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE

April 30, 2012